IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WILLIAM DAVID ROGERS,           )<br>                                                         )<br>          Plaintiff,                         )<br>                                                         )        CIVIL ACTION NO. 2:11cv492-WHA<br>                                                         )<br>HARTFORD LIFE AND ACCIDENT    )<br>INSURANCE CO., BENEFIT           )<br>MANAGEMENT SERVICES,           )                    (wo)<br>                                                         )<br>          Defendant.                       )       | |

## MEMORANDUM OPINION AND ORDER

### I. Introduction

This cause is before the court on the Defendant's Motion for Summary Judgment (Doc. #11), filed on February 17, 2012, and the Defendant's Motion to Strike Exhibits Submitted in Support of Plaintiff's Memorandum (Doc. #18).

The Plaintiff, William David Rogers, originally filed a Complaint in the Circuit Court of Covington County, Alabama on May 11, 2011. The Complaint brings a claim for denial of long term disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA").

On June 22, 2011, the case was removed by the Defendant Hartford Life and Accident Insurance Company[1] to federal court on the basis of federal question subject matter jurisdiction. No Motion to Remand was filed. The court has federal question subject matter jurisdiction in this case because the Plaintiff seeks to recover benefits under an employer-sponsored ERISA plan pursuant to 29 U.S.C. § 1132.

---

[1] The Defendant has noted that it was improperly named as Hartford Life and Accident Insurance Co., Benefit Management Services, in the Complaint.

For the reasons to be discussed, the Motion to Strike and the Motion for Summary Judgment are due to be GRANTED.

## II. APPLICABLE STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Fed. R. Civ. P.* 56(c).[2]

ERISA does not contain a standard of review for actions brought under § 1132(a)(1)(B) challenging benefit eligibility determinations. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108–09 (1989). The Supreme Court, however, established standards for courts to employ when reviewing a denial of benefits decision. *Id.* at 115. Those standards apply to interpretations of plan language was well as factual determinations. *Shaw v. Connecticut Gen. Life Ins. Co.*, 353 F.3d 1276, 1285 (11th Cir. 2003).

In *Williams v. Bellsouth Telecomms., Inc.*, 373 F.3d 1132, 1137 (11th Cir. 2004), *overruled on other grounds by Doyle v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1352 (11th Cir.2008), the Eleventh Circuit set out a six-step framework to apply the *Firestone* standards. In 2008, however, the Supreme Court decided *Met. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), implicating the last step of the *Williams* framework which was known at that time as heightened arbitrary and capricious review. In response to *Glenn*, the Eleventh Circuit has modified its analysis. *See Blankenship v. Met. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011). The steps which this court must now apply in evaluating an ERISA plan administrator's

---

[2] Rule 56 analysis is applied in a modified manner in an ERISA case. *See Blankenship v. Met. Life Ins. Co.*, 644 F.3d 1350, 1354 n.4 (11th Cir. 2011).

decision to deny benefits are as follows:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship*, 644 F.3d at 1355.

### III. FACTS

The submissions of the parties establish the following facts:

William David Rogers ("Rogers") filed a claim for long term disability benefits under a Group Long Term Disability Policy issued by Hartford Life and Accident Insurance Company ("Hartford"), and provided to him by his employer, Wal-Mart Stores, Inc. ("Wal-Mart"). Rogers was employed as a maintenance worker when he stopped work in July 2006 due to neck pain and surgeries.

The Long Term Disability policy at issue in this case provides benefits for "total

disability," meaning that the employee is prevented from performing the essential duties of his own occupation during the "Elimination Period and for the 12 months following the elimination period," and after that, "Any Occupation," where the disability results from accidental bodily injury, sickness, mental illness, substance abuse, or pregnancy. (Doc. #12-1 at p.16).[3] The employee's occupation refers to the occupation the employee was performing immediately prior to the date the employee became disabled. *(Id.)* "Any occupation" means any occupation for which the employee is qualified that has an earnings potential greater than the lesser of 50% of the employee's pre-disability earnings, or the maximum monthly benefit. (*Id.* at p.13).

The policy also provides, in part, that benefit payments will stop the date the claimant is no longer disabled, the date the claimant fails to furnish proof of loss, or the date the claimant is no longer under the regular care of a physician. (*Id.* at p.22). "Proof of loss" can include, but is not limited to, any and all medical information, including x-rays, medical records, including medical histories, physical, mental or diagnostic examinations and treatment notes. (*Id.* at p.24).

In response to Rogers's request for benefits, in December of 2006, Hartford sent Rogers a long term disability packet for Rogers to complete, and later sent him a new packet at Rogers's request. Hartford received the completed packet from Rogers on January 19, 2007. Hartford approved the claim and paid long term disability benefits. This disability payment approval was for the twelve month period from January 22, 2007 through January 22, 2008, during which Rogers was disabled from his own occupation while recovering from surgery.

In August 2007, Hartford notified Rogers that an investigation had been initiated to

---

[3] The court will refer to the portions of the Administrative Record by their document number within the court file, using the page numbers as indicated on the record documents themselves.

determine whether Rogers would qualify for long term disability benefits after January 22, 2008. (Doc. #12-2 at p.88).  The letter explained that to be eligible for benefits after January 22, 2008, Rogers would have to be considered "totally disabled" under the policy.  (*Id.*)  Hartford requested that Rogers complete and return a claimant questionnaire, HIPAA authorization, work and education history form, and have his treating physician return a statement of disability.  (*Id.*)  After Hartford sent additional requests for the same information, Rogers submitted the requested information on November 13, 2007.

Medical records submitted by Rogers included records from Dr. Hackman and Dr. Barrett.  Dr. Hackman is the surgeon who performed an anterior cervical discectomy on Rogers in October 2006 and a lumbar laminectomy in January 2007.  Dr. Hackman reported that Rogers should be out of work for 10 to 12 weeks following the 2007 surgery.  In a document dated December 2007, a Hartford nurse case manager stated that she was reviewing Rogers's medical records for functionality, and asked Dr. Hackman for restrictions or limitations with respect to Rogers's neck or lumbar regions, to which Hackman responded "none."  (Doc. #12-3 at p.261).

Dr. Barrett is Rogers's family physician.  In a letter dated February 18, 2008, Dr. Barrett was asked by the Hartford nurse case manager to indicate whether he agreed that as of January 22, 2008, Rogers could perform a light exertion occupation on a full-time basis.  Dr. Barrett indicated that he did agree, and dated his response February 26, 2008. (Doc. #12-3 at p.260).  Dr. Barrett also indicated on February 26, 2008 that as of January 22, 2008, Rogers could perform sedentary exertion work on a full-time basis. *(Id.)*

On March 11, 2008, Hartford asked a Vocational Rehabilitation Clinical Case Manager to perform an employability analysis using Rogers's work and educational history, and

correspondence from Dr. Barrett and Dr. Hackman.  The employability analysis indicated that Rogers could perform occupations as a group leader, migrant leader, and cleaner/housekeeper. (Doc. #12-3 at p.234).  The analysis also indicated that Rogers could perform sedentary occupations of addresser, carding-machine operator, lens block gauger, and stuffer.  (*Id.* at p.235).

Roger's claim for continued long term disability benefits was denied by Hartford in a letter dated March 20, 2008.  The letter states that the claim was denied based on policy language and a review of the papers contained in the file, including the long term disability application, an employability analysis, Rogers's education and work experience, an attending physician statement signed by Dr. Barnett on November 4, 2007, restrictions and limitations by Dr. Barnett and Dr. Hackman dated February 26, 2008 and December 14, 2007, medical records from Dr. Barnett from July 2007 through October 23, 2007, and medical records from Dr. Hackman from November 21, 2007 to May 22, 2007.   (Doc. #12-2 at p.70-74).  The letter explained that Dr. Hackman indicates he did not have restrictions or limitations in regard to his neck or lumbar and had been released from care and that Dr. Barrett indicated he was capable of performing light or sedentary occupations.  The letter also cited the Vocational Rehabilitation Clinical Case Manager's employability analysis which showed that there are a number of occupations for which Rogers is qualified that are within his physical capabilities, and which are prevalent in the national economy, so that he does not meet the policy definition of disability as of January 22, 2008.  (*Id.* at p.74).

Rogers appealed the denial of continued long term disability payments.  In support of his appeal, Rogers submitted additional medical records from Dr. Barrett, which included a

document dated March 4, 2008 in which Dr. Barrett noted that Rogers is a patient Dr. Barrett "used to see," who is "surely to be disabled soon," and that his "global assessment of functioning is very low but was not actually assessed." (Doc. #12-2 at p.194). Dr. Barrett also states in that document that Rogers cannot do any type of gainful work that requires any physical activity. (*Id.*)

Hartford then requested the opinion of Dr. Leonard Sonne, who is Board Certified in Internal Medicine and Pulmonary Medicine. Dr. Sonne's opinion was that, based upon Rogers's medical records, "there is no objective documentation of any restriction, limitation or impairment that would preclude full time work at any occupation from 1/22/2008 forward to the present." (Doc. #12-2 at p.187). Dr. Sonne noted that Rogers is ambulatory and there is no objective documentation of a decreased exercise capacity, vision impairment, or driving restriction. (*Id.* at 186-88). Dr. Sonne stated that Dr. Barrett's change of opinion regarding restrictions and limitations is not supported by the medical records. (*Id.* at p.187). An amendment to his report, to account for a pulmonary function test, did not change that recommendation. *(Id.* at p.177).

Rogers states in his brief filed in opposition to summary judgment in this case that there is a missing document in the Administrative Record, which is the Physical Capacities Evaluation form completed by Dr. Barrett and dated May 25, 2007.

A copy of Rogers's entire claim file, including the policy, was provided Rogers on August 8, 2008. (Doc. #12-2, p.111).

The appeal of Rogers's claim was denied by Hartford in a letter dated September 3, 2008. (Doc. #12-2 at p.63). That letter states that the documents in the file were reviewed, as well as the policy. The letter acknowledges that Rogers has a Social Security Administration disability

7

claim pending, and notes that the Social Security Administration utilizes a different standard of review. *(Id.)* The letter also states that Hartford sent all of the medical documents in its file to Reliable Review Services where they reviewed by Dr. Leonard Sonne, who is Board Certified in Internal Medicine and Pulmonary Medicine. *(Id.)* The letter informed Rogers that it was Dr. Sonne's opinion that the change of opinion regarding restrictions and limitations by Dr. Barrett is not supported by the medical records and that Rogers was able to perform the duties of a sedentary level occupation. *(Id.* at 64). Finally, the letter informed Rogers that all of his administrative remedies had been exhausted. *(Id.)*

Rogers made a claim for disability benefits with the Social Security Administration, which was granted. The Social Security Administration's determination was made on December 15, 2008, after Hartford's decision as to Rogers's claim for benefits was made final on September 3, 2008.

Rogers then filed his judicial complaint seeking ERISA benefits, which is now before this court.

## IV. DISCUSSION

Rogers presents evidence which he contends demonstrates that Hartford's decision to deny him long-term disability benefits after January 2, 2008 was arbitrary and capricious based on the medical evidence within Hartford's control, and based on Rogers's claim for disability benefits under the Social Security Act. Some of that evidence is the subject of Hartford's Motion to Strike. The court, therefore, turns first to the evidence which may be considered in this case, and then to a review of the decision to deny benefits.

### A. Motion to Strike Rogers's Evidence

Hartford has moved to strike Plaintiff's Exhibit A, which is a Summary Plan Description; Exhibit B, which is a Physical Capacities Evaluation form; Exhibits G and H, which are the Plaintiff's Social Security Administration decision and exhibit list index; and Exhibit I, a letter from Plaintiff's counsel to Hartford asking that the file be reopened to consider the determination by the Social Security Administration.

As to Plaintiff's Exhibit A, Hartford argues that Rogers's claim was decided in accordance with the language of the policy, not the summary plan description which is produced by Wal-Mart. Therefore, Hartford says, Exhibit A is due to be stricken.

Rogers states that he only received Exhibit A, "My Benefits, Wal-Mart Stores, Inc.," and did not receive a copy of the Group LTD policy, so could not have known of any conflicts in the language of the policy.

In reply, Hartford states that Rogers was provided a copy of the policy on August 8, 2008, during his administrative appeal, and that the language of Exhibit A, which is the summary plan description, is substantially similar to the policy in its relevant provisions.

"[T]o prevent an employer from enforcing the terms of a plan that are inconsistent with those of the plan summary, a beneficiary must prove reliance on the summary." *Branch v. G. Bernd Co.,* 955 F.2d 1574, 1579 (11th Cir. 1992). Rogers does not argue that he relied on any contrary language in Exhibit A. The only argument that Rogers advances which arguably relates to reliance on Exhibit A is based on a comparison of language within that document to the language of the standard applied by the Social Security Administration in reviewing claims for disability benefits. For reasons which will be discussed below in connection with exhibits relating to the Social Security Administration, however, that argument is unavailing in this case.

9

Therefore, absent any showing by Rogers of reliance, even assuming, without deciding, that Exhibit A is inconsistent with the controlling plan document, the Motion to Strike is due to be GRANTED as to Exhibit A.

Exhibit B is a Physical Capacities Evaluation ("PCE") form.  Rogers states that the PCE form was mailed to Hartford by certified mail, that he has a certified return receipt showing that Hartford received the packet, and that Hartford acknowledged receiving the packet.

When called upon by the court for a response to this contention, Hartford has set forth a timeline, based on the Administrative Record, the relevant portion of which is as follows:

November 13, 2007: Rogers's long-term disability packet was received by Hartford via certified mail.  (Doc. #12-2 at p.138).

November 15, 2007: Rogers telephoned, and Hartford confirmed receipt of the LTD packet.  (*Id.*)

November 16, 2007: Hartford claims examiner inventoried the documents which included an Attending Physician Statement ("APS") completed by Dr. Barrett dated November 4, 2007; a Claimant Questionnaire; a HIPPA authorization form; Rogers's Work and Educational History form; and information from the Social Security Administration.  *(Id.* at 137-38).

November 19, 2007: Rogers called and was informed that additional records had been requested from Dr. Barrett, but not received.  (*Id.* at 137)

Hartford states, therefore, that although it did receive Rogers's long-term disability packet by certified mail, that packet contained an APS, not the PCE Rogers asks the court to consider. Hartford further states that the PCE form is dated May 25, 2007, a time for which Rogers received benefits.  Finally, Hartford states that the PCE is consistent with the November 4, 2007

APS statement, so the information was considered by Hartford.

Having reviewed the documentary evidence, it appears that Rogers is merely mistaken in the contention that Hartford received his Exhibit B, because the LTD packet, while received, did not contain that exhibit. In any event, the evidence cited by Rogers is insufficient to prove that Hartford received the PCE form. As noted earlier, under the ERISA plan, Rogers bore the burden of providing proof of loss (Doc. #12-1 at p.22), so that Hartford had no duty to consider information not before it at the time of the decision.

Rogers has also argued in response to the Motion to Strike that the court should consider the questioned exhibits even if they are outside of the administrative record. Rogers argues if this court finds that the heightened arbitrary and capricious standard of review applies, the court can consider evidence outside of the administrative record.

The Eleventh Circuit has explained that "[w]hen conducting a review of an ERISA benefits denial under an arbitrary and capricious standard (sometimes used interchangeably with an abuse of discretion standard), the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." *Jett v. Blue Cross and Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1140 (11th Cir. 1989). The Eleventh Circuit has recently reiterated, in a case reviewed under arbitrary and capricious review where there was a structural conflict of interest, that "[r]eview of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision." *Blankenship v. Met. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011) (*citing Jett*, 890 F.2d at 1140). There is no evidence to establish that Exhibit B was within the administrative record. The Motion to Strike is, therefore, due to be GRANTED as to Exhibit B. *See Snider v. Cingular Wireless Health and Welfare Benefits Plan*

*for Non-Bargained Employees*, No. 3:04cv198-J-32MMH, 2006 WL 2400952, at *6 (M.D. Fla. Aug. 18, 2006) (letters or medical information submitted subsequent to appeal of benefits decision not considered by the district court).

Hartford moves to strike Exhibits G, H, relating to the Social Security Administration decision, and Exhibit I, a letter from Plaintiff's counsel to Hartford requesting that his file be reopened in light of the Social Security Administration's determination.  Hartford argues that the Social Security Administration's determination was made on December 15, 2008, after the plan administrator's decision as to Rogers's claim for benefits was made final on September 3, 2008, and is not part of the administrative record.

Rogers has argued that Hartford should have considered the Social Security Administration's determination that he was permanently disabled.  He contends that the standard applied by the Social Security Administration is actually more stringent than the standard in the Summary Plan Description, Plaintiff's Exhibit A, discussed above, so that the Social Security Administration's decision is evidence that the denial of benefits by Hartford was arbitrary and capricious.

This court cannot consider the Social Security Administration's determination because of the rule that this court's review is limited to information that was before the plan administrator, which has been applied to determinations by the Social Security Administration which occurred after completion of an ERISA plan claim appeal.  The Eleventh Circuit, in unpublished opinions, has held that district courts appropriately refused to consider a Social Security Administration award of benefits which was outside the administrative record.  *See Townsend v. Delta Family-Care Disability and Survivorship Plan,* 295 F.App'x 971, 976 (11th Cir. 2008) (case conducting

capricious review with no conflict of interest); *Richards v. Hartford Life & Acc. Ins. Co.*, 153 F.App'x 694, 697 n.1 (11th Cir. 2005) (case conducting arbitrary and capricious review with a conflict of interest).[4] This is also consistent with the holdings of other circuits. *See, e.g., Barnhart v. Unum Life Ins. Co.*, 179 F.3d 583, 590 (8th Cir. 1999) (Social Security benefits letter was not before the long term disability benefits administrator and should not have been considered by the court). The court finds these authorities persuasive. The Motion to Strike is, therefore, due to be GRANTED as to Exhibits G, H, I, and the court will not consider the award of long term disability benefits to Rogers by the Social Security Administration in ruling on the Motion for Summary Judgment.

B.  Rogers's Claim for Benefits

There is apparently no dispute in this case that the policy at issue contains an express grant of discretionary authority to Hartford, or any dispute that Hartford has a structural conflict of interest. Therefore, the entire six-step analysis the Eleventh Circuit has given to guide district courts in reviewing an administrator's benefits decision in such cases is applicable. That standard, set out fully above, is in summary as follows: the court first conducts a *de novo* review to determine if the administrator's decision was wrong; if the decision was wrong, the court determines whether the administrator had discretion to review claims; if the administrator had discretion, the court determines whether reasonable grounds supported the decision; if reasonable grounds exist, the court decides whether was there a conflict of interest; and, if so, takes the conflict into account, and decides whether the decision was arbitrary and capricious.

---

[4] In a published opinion, the Eleventh Circuit has also conducted the applicable analysis in a case in which there was a favorable Social Security Administration determination without considering that decision. *See Blankenship,* 644 F.3d at 1353 n.3, 1356.

*Blankenship*, 644 F.3d at 1355.

In conducting a *de novo* review of the decision to deny benefits, the court must decide whether it disagrees with the administrator's decision. *Id.* at 1355. As noted earlier, the letter denying Rogers's claim for long term disability as of January 22, 2008, relied on opinions by Dr. Hackman that Rogers did not have restrictions or limitations in regard to his neck or back, and by Dr. Barrett that Rogers was capable of performing light or sedentary occupations. (Doc. #12-2 at p.70-74). The letter also cited the Vocational Rehabilitation Clinical Case Manager's employability analysis which showed that there are occupations for which Rogers is qualified that are within his physical capabilities, and which are prevalent in the national economy, so that he does not meet the policy definition of disability as of January 22, 2008. (*Id.* at p.74).

The only new evidence before Hartford during the appeal of the denial of benefits was a changed opinion by Dr. Barrett on March 4, 2008, that Rogers cannot do any type of gainful work that requires physical activity. (Doc. #12-2 at p.194). In the same document, Dr. Barrett noted that Rogers, was a patient he "used to see," who "will be disabled soon," and that Rogers's global assessment of functioning is very low but was not actually assessed. (*Id.*)

In its letter denying the appeal of Rogers's claim denial, Hartford stated as follows:

> To summarize, Dr. Barrett previously opined that Mr. Rogers is able to perform a light or sedentary level occupation. Dr. Barrett's change of opinion is not supported by the medical records. Dr. Hackman has opined that Mr. Rogers has no neck or lumbar restrictions. Dr. Sonne's pulmonary and internal medicine independent physician review supports Mr. Rogers' ability to perform the duties of a sedentary level occupation. Alternative transferable occupations were identified in the Employability Analysis Report that meet Policy requirements.

(Doc. #12-2 at p.64).

Rogers has argued that the opinion of Dr. Barrett should have been accepted, and should

14

be accepted by this court, rather than the findings of Dr. Sonne, because Dr. Sonne had never seen or examined Rogers and was not aware of his subjective complaints. Rogers does not, however, cite any authority for the proposition that Hartford's reliance on Dr. Sonne's findings was improper.

This court concludes that Hartford's determination was correct. At the time of the initial denial of benefits based on the inability to perform "any occupation," the employability analysis and the medical evidence, including Dr. Barrett's February 2008 opinion, supported a finding that Rogers could perform sedentary occupations.[5] The opinion of Dr. Barrett in March 2008 which contradicted his February 2008 opinion was offered without explanation of the contradiction. There is no factual basis from which to conclude that Rogers's condition had changed from February to March 2008, both because of the short period of time which elapsed, and because Dr. Barrett stated in March 2008 that Rogers is a patient he "used to see," who will become disabled, and that functioning was not assessed. (Doc. #12-2 at p.194).

In deciding the appeal of Rogers's claim, and faced with the contradiction of Dr. Barrett's own earlier opinion, Hartford sought out an independent medical opinion from Dr. Sonne, a board certified physician. Dr. Sonne concluded that Rogers was not restricted from full-time work, and that the change of opinion regarding restrictions and limitations by Dr. Barrett was not supported by the medical records. The mere fact that Dr. Barrett was a treating physician does

---

[5] The only evidence which even arguably supported a finding of disability at that time came from Dr. Barrett. As Rogers points out in opposing summary judgment, in November 2007, Dr. Barrett indicated restrictions on the amount of weight Rogers could carry and on his movements. *See* Plaintiff's Exhibit C. Those restrictions in November 2007 were during the covered disability period, however, and preceded Dr. Barrett's February 2008 opinion that Rogers could perform sedentary work, so that reliance on the February 2008 opinion instead of the November 2007 assessment was correct.

not entitle his opinion to special weight. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003). This court finds, therefore, that Hartford's determination under the terms of the policy that Rogers was not totally disabled as of January 22, 2008 was correct. *See Muzyka v. Unum Life Ins. Co. of Am.*, 195 F.App'x 904, 909 (11th Cir. 2006) (administrator's decision was not *de novo* "wrong" where "[t]here was no evidence, other than conclusory and at times inconsistent statements by [plaintiff's] treating physician based on self-reporting, to document any decrease in functional capacity."). Summary judgment is due to be GRANTED as to Hartford on that basis.

Alternatively, even if the determination that Rogers was not totally disabled under the policy was "wrong," this court still concludes, under the remaining analytical steps, that summary judgment is due to be GRANTED. In applying the remaining *Williams* analytical steps, the court is guided by the analysis in *Blankenship*, 644 F.3d at 1356, which involves facts similar to those in the instant case.[6]

The plaintiff in *Blankenship* suffered a heart attack and was provided long term disability benefits for a period of time. After receiving medical records and evaluating the benefits claim, the plan administrator notified the plaintiff that his disability benefits would end. The plaintiff appealed that decision and submitted letters from his internist and cardiologist. The plan administrator submitted the file to an independent cardiologist for review, and then denied the appeal. The plaintiff suffered an additional injury to his knee, for which he received benefits for a time, and then was denied long-term benefits. The administrator hired an independent

---

[6] The court notes one difference in that the plan in *Blankenship* required conclusive medical evidence of disability, *Blankenship*, 644 F.3d at 1356, but the court did not indicate that its analysis should be limited to plans with that standard.

16

vocational rehabilitation consultant, who identified several occupations in which the plaintiff could be employed.  The claim for long term benefits was denied on the basis that the plaintiff did not qualify for benefits under an "any occupation" standard.  The plaintiff appealed.  The plaintiff presented evidence from his treating physicians but some of that evidence could have led the administrator "to doubt some of the medical opinions." *Id.* at 1356.  For instance, one cardiologist contradicted himself within a two month period in offering opinions. *Id.*  The administrator submitted the claim for file review to specialists.  The plan administrator subsequently denied the appeal.

   The plaintiff then filed a complaint in federal district court, and the district court found that the administrator's decision was arbitrary and capricious. *Id.* at 1354. The court later amended its order to state that its decision implied that the administrator was *de novo* wrong. *Id.* The Eleventh Circuit reversed the district court on appeal, holding that the administrator's denial of benefits was not arbitrary and capricious. *Id.* at 1357-58.  The court reasoned that the administrator acted reasonably in relying on independent medical opinions, and in crediting those opinions over the plaintiff's doctors' opinions, particularly when there was a reason to doubt the treating physicians' opinions. *Id.* at 1356.  The court also noted that a plan administrator need not give extra weight to the opinions of a claimant's treating physician. *Id.*  The court concluded, therefore, that the administrator's decision had a reasonable basis. *Id.*  The court further explained that reliance on file reviews, rather than physical examinations, by independent doctors was not evidence that the administrator acted arbitrarily and capriciously. *Id.* at 1357.  In applying the final steps of the applicable analysis, the court reasoned that even considering that the administrator had a structural conflict of interest, the plaintiff had not sufficiently shown that

the "structural conflict of interest in this case had sufficient 'inherent or case-specific importance,'" *Glenn*, 128 S.Ct. at 2351, for [the court] to overturn [the] benefits decision." *Id.* at 1357.

In the instant case, similar to *Blankenship*, the plan administrator relied on medical opinions and a vocational evaluation, all of which supported the denial of continued benefits. When the decision was appealed, and one of doctors, Dr. Barrett, who initially gave an opinion that Rogers could perform sedentary work changed his opinion, Hartford sought an independent medical doctor's opinion. The independent doctor reviewed the contradictory opinions of Dr. Barrett. It was reasonable to rely on Dr. Sonne's independent opinion regarding the weight of Dr. Barrett's changed opinion, particularly because Dr. Barrett's opinion contradicted his own earlier opinion. *See id.* at 1356. The court concludes, therefore, that Hartford's determination that Rogers was not entitled to benefits for total disability as of January 22, 2008, which was based on employability analysis and medical evidence, was based on reasonable grounds. *See Richards v. Hartford Life & Acc. Ins. Co.*, 153 F.App'x 694, 697 (11th Cir. 2005) (explaining that even if an administrator was wrong in choosing between the conflicting opinions of treating and reviewing physicians, even under a heightened arbitrary and capricious standard, the court "could not say that the administrator abused his discretion by relying on the independent reviewing physician's opinion . . . .").

It is undisputed that Hartford had a structural conflict of interest because Hartford makes eligibility decisions and pays benefits out of its own funds. Rogers does not, however, advance any argument or point to evidence specific to that conflict of interest. The court has considered that there is a structural conflict of interest, and concludes that Rogers has not shown that the

structural conflict of interest has sufficient inherent or case-specific importance to overturn the benefits decision in this case. *Blankenship*, 644 F.3d at 1357.

## V. CONCLUSION

For the reasons discussed, the court concludes that Hartford's denial of benefits to the Plaintiff, Rogers, was not "wrong," under the *de novo* standard. Alternatively, even if the determination that Rogers did not meet the plan's definition of total disability as of January 22, 2008 was wrong, the court concludes that the determination was based on reasonable grounds, and has not been shown to be arbitrary and capricious because of the structural conflict of interest. Accordingly, it is hereby ORDERED as follows:

1. The Motion to Strike (Doc. #18) is GRANTED.

2. The Motion for Summary Judgment (Doc. #11) is GRANTED.

3. A separate Final judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this 16th day of April, 2012.

                                              /s/ W. Harold Albritton  
                                              W. HAROLD ALBRITTON  
                                              SENIOR UNITED STATES DISTRICT JUDGE